```
                                                    F I L E D
                                                    DEC 1 8 2008
                                            CLERK, U.S. DISTRICT COURT
                                                  ALEXANDRIA, VA
```

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Russell K. Stepp, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:08cv665 (LO/JFA)** |
| | ) | |
| Roy Cherry, et al., | ) | |
|     Defendants. | ) | |

### MEMORANDUM OPINION

Russell K. Stepp, a Virginia inmate proceeding pro se, filed this civil rights action, pursuant to 42 U.S.C. § 1983, against numerous officials at the Hampton Roads Regional Jail ("HRRJ")for violations of his Eighth and Fourteenth Amendment rights. By Order dated July 28, 2008, plaintiff was directed to particularize and amend his complaint; execute and return an application to proceed in forma pauperis, a form indicating his consent for prison officials to deduct the $350.00 filing fee in installments from plaintiff's prison account, and a verified statement concerning his exhaustion of his institutions' administrative grievance process; and inform the Court of the date on which he delivered his complaint to prison officials to be mailed within thirty days of the date of the Order. On August 28, 2008, plaintiff complied with the July 28 Order by submitting an amended complaint, a verified statement concerning his exhaustion of his institution's administrative grievance process, an affidavit informing the Court when he delivered his complaint to prison officials, a form indicating his consent to the collection of the filing fee from his inmate account, and an in forma pauperis application. He has also filed a Motion to Request Legal Representation.

In his amended complaint, plaintiff brings the following seven claims against thirteen named defendants:

1.  Defendant Cherry, Superintendent of HRRJ, violated plaintiff's Eighth and Fourteenth Amendment rights by knowingly allowing his administration to deny prisoners participation in the classification process, and by failing to intervene on an administrative level to prohibit gangs from assaulting non-gang prisoners.

2.  Defendants Hatchett, Ward, and Garrett violated plaintiff's Eighth and Fourteenth Amendment rights, while acting in a supervisory capacity, by failing to protect plaintiff from assault while knowingly allowing an established gang to inflict harm on other prisoners and by failing to conduct thorough searches for weapons after having prior knowledge of attacks against other prisoners.

3.  Defendants Whitehead and Ward violated plaintiff's Eighth and Fourteenth Amendment rights by knowingly assigning members of gangs to "key jobs," such as serving meals and washing personal clothes, which allowed the gang members to extort money from prisoners for these services.

4.  Defendants Ward, Garrett, Moabe, Powell, and Casper violated plaintiff's Eighth and Fourteenth Amendment rights by failing to protect plaintiff, by not intervening and preventing several gang members from attacking plaintiff.

5.  Defendant Casper violated plaintiff's Eighth and Fourteenth Amendment rights by intentionally denying plaintiff access to the institutional grievance procedure, refusing medical attention to plaintiff, and leaving plaintiff in a cell with no water and "covered in filth."

6.  Defendants Dickerson and Taylor violated plaintiff's Fourteenth Amendment rights by deliberately denying plaintiff due process of law because they failed to allow plaintiff to be present at his classification hearing, thus he was not able to offer testimony, call witnesses, and question adverse witnesses at the hearing.

7.  Defendants Kolongo, Jones, and Williams violated plaintiff's Eighth and Fourteenth Amendment rights by being "deliberately indifferent" to plaintiff's serious medical needs, and by conspiring to deny plaintiff access to meaningful medical treatment through refusal to answer numerous complaints, and not returning grievances filed by plaintiff.

On review of plaintiff's amended complaint, Claims 1, 2, 3, 5, 6, and 7 must be dismissed

for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event,

## I. Background

On June 21, 2006, plaintiff was attacked and beaten by several prisoners in HRRJ. According to plaintiff, defendants Ward, Garrett, Moabe, Powell, Casper, and several other unidentified officers responded to the altercation, but rather than intervening, they remained outside the pod area and viewed the altercation through the glass partition until "security" arrived, which took at least several minutes.  Plaintiff was then taken to the medical facility at HRRJ and was treated by the nurse on duty, who washed plaintiff's wounds, applied bandages where necessary, and informed plaintiff that he might have a concussion and should be kept under observation.  After being treated, plaintiff was taken to a segregated pod, and locked in a cell that plaintiff alleges was "covered in filth, including urine and excrement, with no working sink." During his time in that cell, plaintiff asked defendant Casper several times to contact medical personnel because plaintiff was experiencing dizzy spells and had lost consciousness at least once.  Plaintiff also requested that Casper bring him an emergency grievance.  Plaintiff states that Casper did not bring him the grievance until June 22, 2006 at 11:00 p.m., and that Casper did not sign the grievance until June 23, 2006 at 5:40 a.m.  However, plaintiff does not indicate when the original request for the grievance was made.  Plaintiff states that this grievance was never responded to or returned to

---

as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
  (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
  (2) seeks monetary relief from a defendant who is immune from such relief.

plaintiff.[2]  Am. Compl.

On June 23, 2006, plaintiff was questioned by defendants Hatchett and Whitehead regarding the incident from June 21.  Plaintiff alleges that Hatchett and Whitehead informed plaintiff that there had been numerous attacks on people by the gang that attacked plaintiff, that they were aware of the "terror tactics" used by this gang to extort money and other items from non-gang prisoners, that they were aware of the weapons used by the gang members to carry out acts of intimidation, and that the jail administration was planning on pursuing criminal charges.  According to plaintiff, defendant Cherry acknowledged that he was aware of the incident and had contacted the Portsmouth Police Department to conduct an independent investigation and pursue criminal charges against the participants.  Additionally, plaintiff states that Cherry had claimed to be conducting an internal investigation to address any administrative issues "as may be appropriate."  Am. Compl.

That same day, plaintiff was taken to a local hospital for further treatment.  Upon his return to HRRJ, plaintiff was placed in a medical pod.  Although plaintiff previously was placed in a segregated pod, and claims to have been returned to a medical pod, he appears to indicate that he was

---

[2] Plaintiff states in his amended complaint that "this was the first in an ongoing procedure of the HRRJ policy of disregarding, or simply disposing of, complaints and grievances filed by plaintiff." Plaintiff alleges that several complaints were returned with "generic or unhelpful answers," and that when grievances were filed, there was often no response.  Plaintiff attached numerous grievance and complaint forms to his amended complaint.  Although two emergency grievances seeking medical attention do not appear to have received a written response, the first emergency grievance requesting medical treatment was submitted on the same day that plaintiff was taken to the emergency room for treatment, and the second was filed the day after he received treatment.  On a third emergency grievance filed on June 28 again requesting medical treatment, it is noted that plaintiff was also seen in the jail clinic on June 27, in addition to his June 23 hospital visit.  Thus, although he received no written response, plaintiff actually received the relief he sought in his grievance forms.  Furthermore, to the extent plaintiff claims he got "generic or unhelpful answers," each grievance submitted that did contain a response indicated to plaintiff how to seek further assistance with his complaints or why his complaint already was addressed.

4

either in a different cell with a broken sink, or in the original cell with a broken sink. Plaintiff claims he had no access to water for six days, until June 29, 2006, and that a complaint about the cell conditions was returned to him "unsigned and unrouted," with instructions to file a maintenance request.

On June 27, 2006, plaintiff received a disciplinary report, resulting from the June 21 incident, for fighting with another person. After pleading guilty to the charge, plaintiff was sentenced to six days in isolation, for which he was credited with time served, and was referred to the institutional classification committee ("ICC") for review. Plaintiff alleges that after he inquired about having a "formal ICC hearing," defendant Dickerson told him that it "would do him no good" because "this was how they did it at this jail." After obtaining a copy of his formal ICC review form, plaintiff found that an ICC hearing was held on June 28, 2006, and that he was sentenced to administrative segregation security due to the severity of the incident. According to plaintiff, signatures on the form show that defendant Dickerson and Officer Warren were the sole individuals conducting the review. Plaintiff notes that all complaints and grievances regarding the failure of the jail to allow him to participate in the classification were either ignored or never returned. Am. Compl.

In addition to the injuries he received directly from the attack, plaintiff also alleges that on or about October 2, 2006, he lost consciousness, fell, and struck his arm on the steel bunk. He suffered a severe contusion and possible fracture of his right arm. When receiving treatment, plaintiff allegedly informed the attending physician, defendant Dr. Kolongo, about symptoms he still had from the original attack, but according to plaintiff the doctor "flatly refused to treat or test plaintiff for severe headaches, dizzy spells, hearing loss, and sharp pain in [the] neck and shoulder." Plaintiff claims that grievances and complaints were either ignored or never returned. Am. Compl.

## II. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## III. Analysis

Although district courts have a duty to construe complaints by pro se litigants liberally, those complaints must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Moreover, plaintiff must allege that each named defendant had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant. Plaintiff's amended complaint enumerates seven claims. Because claims 1, 2, 3, 5, 6, and 7 do not allege a cause of action under § 1983 against the named defendants, these claims will be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

6

Claim 1: Classification System Policy, Gang Activity, and Supervisory Liability

In Claim 1, plaintiff alleges that defendant Cherry, Superintendent of HRRJ, violated plaintiff's Eighth and Fourteenth Amendment rights "by knowingly allowing his administration to deny prisoners participation in the classification process thereby denying them due process of law, and through [Cherry's] inaction to intervene on an administrative level to prohibit gangs from assaulting non-gang prisoners . . . ." Am. Compl.  When a plaintiff seeks to hold a defendant liable on the grounds of supervisory liability, the plaintiff must show that the supervisor had "actual or constructive knowledge of the risk of constitutional injury, that he demonstrated deliberate indifference to that risk, or that his actions were causally related to injury suffered by" the plaintiff. Turner v. Kight, 121 Fed. Appx. 9, 15 (4th Cir. 2005).  Failure to do so "is fatal to [a plaintiff's] claim" of supervisory liability. Id.  Here, plaintiff presents no facts in support of, and does no more than make conclusory allegations regarding, Cherry's knowledge of the HRRJ classification policy.

Moreover, even if Cherry did have knowledge about this alleged exclusion policy at HRRJ, plaintiff has failed to show that he had a liberty interest in his classification sufficient to warrant the protections of the due process clause.  For a plaintiff "to prevail on a § 1983 claim that actions by state officials respecting a state prison inmate's security and custody classification have violated the inmate's procedural due process rights, the [plaintiff] must prove that (1) he had a protected liberty interest in receiving a new or retaining a current classification, (2) which interest was adversely affected by the actions, (3) without the protections of due process guaranteed by the Fourteenth Amendment." Slezak v. Evatt, 21 F.3d 590, 593 (4th Cir. 1994) (citing Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974)).  The constitution itself "vests no liberty interest in inmates retaining or receiving any particular security or custody status" provided it is within the bounds of the plaintiff's

7

sentence and not otherwise violative of the constitution. Id. at 594. As the Fourth Circuit has noted, "within these limits, so far as the federal constitution is concerned, the security and classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints." Id. Plaintiff has alleged no liberty interest in his classification, nor has he presented any facts to support such a claim. Thus, plaintiff has failed to state a Fourteenth Amendment claim against defendant Cherry for violating his procedural due process rights.

In addition, plaintiff has also failed to allege that Cherry had any actual or constructive knowledge regarding a history of gang activity at HRRJ that created a risk of constitutional injury to plaintiff, nor does he assert that Cherry demonstrated deliberate indifference to that risk, or that his actions were causally related to plaintiff's injury. Plaintiff states only that Cherry knew of the incident after the fact, and that Cherry sought to address the situation by initiating both an internal and an external independent investigation. Otherwise, plaintiff alleges no personal knowledge or involvement by Cherry in this incident. Furthermore, even if Cherry had knowledge of the gang activity, plaintiff still fails to state a claim for failure to protect under the Eighth Amendment. To establish a claim of failure to protect under the Eighth Amendment, a prisoner must satisfy two elements. First, the deprivation alleged must be, "objectively, sufficiently serious." Odom v. S.C. Dep't. of Corr., 349 F.3d 765, 770 (4th Cir. 2003) (internal quotations omitted). Second, " a prisoner must present evidence that the prison officials had a 'sufficiently culpable state of mind.'" Id. In other words, a plaintiff must show that the prison official was deliberately indifferent, meaning that the official "knows of and disregards an excessive risk to inmate health or safety," such that "the official must both be aware of facts from which the inference could be drawn that a substantial risk

8

of serious harm exists, and he must also draw the inference." Id. Here, even if the injuries sustained by plaintiff were sufficient to satisfy the first element, plaintiff has failed to allege any facts to indicate Cherry knew of and ignored a risk to plaintiff. Plaintiff states only that Cherry knew of the incident after it had already occurred, and at that time was taking steps to remedy the situation. As a result, plaintiff has failed to state a claim against defendant Cherry for failure to protect. As such, Claim 1 will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

Claim 2: Failure to Protect by Officers in a Supervisory Capacity

In Claim 2, plaintiff alleges that defendants Hatchett, Ward, and Garrett violated plaintiff's Eighth and Fourteenth Amendment rights, while "acting as supervisory officials by failing to protect plaintiff from assault while knowingly allowing an established gang of individuals to continue to inflict harm upon other prisoners and defendants [sic] inaction to conduct thorough searches for weapons after having prior knowledge of prisoners being injured, intimidated and threatened with knives and other makeshift weapons." As an initial matter, at no point in his amended complaint does plaintiff allege that defendants Ward and Garrett had any knowledge of the alleged gang activities in HRRJ or ever discussed this matter with plaintiff in a supervisory capacity. Therefore, plaintiff has failed to state a claim against these defendants.

Regarding defendant Hatchett, plaintiff states that Hatchett questioned plaintiff after the incident, and told plaintiff that "he had been the victim of a specific gang attack and that due to the recent numerous attacks . . . the jail administration was planning on pursuing criminal charges against" those responsible. Plaintiff further claims that Hatchett "admitted to plaintiff that [he] was aware of the 'terror tactics'" used by gang members to extort money and other items from prisoners, as well as the weapons being used by gang members to intimidate non-gang prisoners.

9

Although prison officials have a duty to protect prisoners from violence at the hands of other prisoners, as noted, to state a claim under the Eighth Amendment, a prisoner must satisfy two elements. First, a plaintiff must show there is a sufficiently serious deprivation, which requires "a serious or significant physical or emotional injury resulting from the challenged conditions" or "a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom, 349 F.3d at 770. Second, a plaintiff must present evidence that prison officials were deliberately indifferent to the plaintiff's health or safety. Id. To support this assertion, a plaintiff must show that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The standard evinces a duty of reasonable safety.

Here, even assuming plaintiff satisfies the first requirement of injury, plaintiff has failed to allege facts to support a claim that Hatchett was deliberately indifferent to plaintiff's health or safety. In fact, plaintiff admits that during their interaction, Hatchett told plaintiff that the prison administration was in the process of taking action against the gangs by pursuing criminal charges. Plaintiff was also provided with face cards in an attempt to determine who had perpetrated the attack on plaintiff. Although plaintiff alleges that Hatchett knew of the gangs and their tactics, there is nothing to suggest that he, or any other prison official, ignored an "excessive risk" to plaintiff's safety. In fact, the actions which admittedly were being taken by prison officials indicate an effort to resolve the problem and to eliminate whatever risk may have been present. Thus, plaintiff has failed to state a claim against any defendants for failure to protect, and Claim 2 will be dismissed.

Claim 3: Assignment of Jobs and Knowledge of Running Extortion Schemes

In Claim 3, plaintiff alleges that defendants Whitehead and Ward, in their capacity as building supervisors, violated plaintiff's Eighth and Fourteenth Amendment rights by "knowingly assigning members of gangs to jobs which included the serving of meals [and] washing personal clothes thereby allowing gang members to charge other individuals to receive their meals [and] have their clothes washed," as well as allowing gang members to extort money and other items from non-gang prisoners. Plaintiff has failed to state a claim against defendant Ward, as he has presented no factual allegations against Ward regarding this claim. As for defendant Whitehead, plaintiff alleges that Whitehead was, in fact, aware of the presence of gangs in HRRJ as well as the tactics and weapons used by the gangs. However, plaintiff does not allege any facts in the amended complaint to suggest that Whitehead assigned any individuals to specific jobs, or that he personally allowed gang members to extort money from other prisoners. Furthermore, even if Whitehead knew of the "tactics" of the gang members for extortion, plaintiff fails to allege that he was actually a victim of the extortion that he witnessed, or that the extortion resulted in any injury to him. Accordingly, Claim 3 will be dismissed for failure to state a claim.

Claim 5: Institutional Grievances, Medical Treatment, and Cell Conditions

In Claim 5, plaintiff alleges that defendant Casper violated plaintiff's Eighth and Fourteenth Amendment rights by intentionally denying plaintiff access to the institutional grievance process, refusing him medical attention, and leaving him in a cell that was covered in filth and had no water. The Constitution "creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Mitchell v. Murray, 856 F.Supp. 289, 294 (E.D.Va. 1994). Because a state's grievance procedure confers no substantive rights upon prison inmates, a prison official's failure to comply with the grievance

11

procedures is not actionable under § 1983. See Adams, 40 F.3d at 75; Mitchell, 856 F.Supp. at 294. Therefore, while plaintiff states that he did ultimately receive a grievance form from Casper, even if Casper denied plaintiff access to the prison grievance system, such an allegation does not state a claim under § 1983.

Plaintiff also asserts a claim of failure to provide medical care. Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). However, in order to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Virginia Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). An assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Here, after the attack, plaintiff immediately was treated by a nurse at HRRJ, and also was seen shortly thereafter at a local hospital. The fact that Casper did not respond immediately when plaintiff demanded further treatment does not satisfy the requirements of an Eighth Amendment claim. Plaintiff alleges only that he was feeling dizzy and had lost consciousness once. While it is not clear if plaintiff specifically informed Casper of these facts, even if he did, plaintiff's symptoms do not rise to the level of a serious medical need. Plaintiff had already been treated once, and had received additional treatment a short time later, thus the facts are insufficient to support a claim of failure to provide medical care under the Eighth Amendment.

Finally, plaintiff alleges that Casper kept him in a dirty cell that had no working sink. To establish a claim of cruel and unusual punishment, plaintiff must allege and prove (1) an objectively

12

serious deprivation of a basic human need, one causing serious physical or emotional injury and (2) that prison officials acted with deliberate indifference to his needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). As to the first prong, the Supreme Court has stated that "[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). Thus, the deprivation must result in a serious injury to the prisoner. Strickler, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."). Here, plaintiff alleges that his cell was filthy, covered in urine and excrement, and had no working sink. Although these conditions may have been unpleasant or unsatisfactory, plaintiff alleges no injury resulting from these conditions. Thus, plaintiff has not presented facts sufficient to support a claim of cruel and unusual punishment. Accordingly, Claim 5 will be dismissed for failure to state a claim.

Claim 6: Due Process and Classification Hearing

In Claim 6, plaintiff alleges that defendants Dickerson and Taylor violated his Fourteenth Amendment rights "by deliberately denying plaintiff due process of law by conducting classification hearings without allowing prisoners to be present [and] participate in the classification process, thereby subjecting plaintiff to administrative segregation without the oppurtinity [sic] to offer testimony, call witnesses and question adverse witnesses." Plaintiff states that he expressed an

13

interest to Dickerson in having a formal ICC hearing so that he could participate in the classification process, but Dickerson told plaintiff that it would do him no good to be there. According to plaintiff, signatures on the ICC review form he obtained show that Dickerson and Warren were the sole persons conducting the review, but that "Chief of Security signature shows Lt. T. Ell for Captain Taylor and superindents/designee signature shows Lt. Col. D.L. Simmons/M.F.Pollard." Plaintiff claims that all complaints and grievances filed regarding the ICC hearing either were ignored or never returned.

As stated above, to prevail on a § 1983 claim alleging that "actions by state officials respecting a state prison inmate's security and custody classification have violated the inmate's procedural due process rights, the [plaintiff] must prove that (1) he had a protected liberty interest in receiving a new or retaining a current classification, (2) which interest was adversely affected by the actions, (3) without the protections of due process guaranteed by the Fourteenth Amendment." Slezak, 21 F.3d at 593. Because there is no express liberty interest in retaining or receiving a specific security or custody status, any re-classification is not constitutionally suspect, provided it is within the bounds of the plaintiff's sentence and not otherwise violative of the Constitution. Id. at 594. Accordingly, "the security and classification of state prison inmates is a matter for state prison-official discretion," and federal due process constraints do not apply. Id. A liberty interest in retaining or attaining a specific security classification is created only when state law places substantive limitations on official discretion, "thereby giving rise, at the limits imposed upon discretion to legitimate claims of entitlement, . . . to the classification sought and administratively denied." Id. (citations omitted).

As an initial matter, plaintiff has failed to allege any facts to indicate that, aside from signing

14

his name on a form, defendant Taylor played any role at the classification hearing. Plaintiff himself states that the "signatures on the form denote defendant Dickerson and Officer Warren as the sole persons conducting the review." Taylor allegedly did nothing but sign off on the form. Thus, plaintiff has failed to state a claim as against defendant Taylor.

In order to state a claim against defendant Dickerson, plaintiff would have to allege that he has a liberty interest in his classification. However, the law is clear that no such interest exists, provided the conditions or degrees of confinement are within the sentence imposed and not otherwise unconstitutional, and unless state law expressly provides that where certain conditions are met, a prisoner has an automatic legal entitlement to a specific classification. Slezak, 21 F.3d at 593-94. Plaintiff has failed to allege that he has any such liberty interest. Furthermore, even if plaintiff had alleged such an interest, Virginia law provides prison officials with discretion in making security classifications. See Va. Code Ann. § 53.1-200, 201, 202.4 (declaring that the state Board of Corrections is responsible for establishing and approving regulations that will govern the earning of good conduct allowances and security classifications). Since plaintiff is not entitled to any specific classification, he has no liberty interest at stake, and he was not entitled to any specific procedures at his classification hearing. Accordingly, Claim 6 will be dismissed for failure to state a claim.

Claim 7: Denial of Medical Care

In Claim 7, plaintiff alleges that defendants Jones, Williams, and Kolongo, whom plaintiff claims are "the primary decision makers, administrators and dispensers of medical treatment" at HRRJ, violated his Eighth and Fourteenth Amendment rights "by being deliberately indifferent to serious medical needs of plaintiff thereby subjecting plaintiff to months of inhumane suffering [and] pain . . . ." Plaintiff also alleges that defendants Jones, Williams and Kolongo conspired to deny

plaintiff access to "meaningful medical treatment by refusing to answer numerous complaints and not returning grievances filed by the plaintiff." As previously discussed, the Eighth Amendment guarantees prisoners the right to reasonable medical care, but to have such an allegation rise to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 104-05. Thus, plaintiff must first demonstrate a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, plaintiff must show deliberate indifference to that serious medical need; mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels, 474 U.S. at 328; Miltier, 896 F.2d at 851. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Additionally, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Here, plaintiff has failed to allege any facts indicating that he was ever seen or treated by defendants Jones or Williams, thus he has failed to state a claim against those defendants. As for defendant Kolongo, plaintiff alleges that he was treated by Kolongo on October 2, 2006 for a contusion and possible fracture in his arm, which he alleges resulted from one of several dizzy spells. Kolongo was the attending physician who, according to plaintiff, refused to test or treat him for severe headaches, dizzy spells, hearing loss, and sharp pain in his neck and shoulder. Plaintiff alleges again that his complaints and grievance were ignored. However, plaintiff has attached

16

numerous complaint and grievance forms, all of which indicate that plaintiff was seen many times between the date of the incident and the date of his treatment by Kolongo.[3] Plaintiff's ailments thus were not being ignored by prison officials, and the fact that plaintiff disagreed with defendant Kolongo regarding his course of treatment on this particular date does not make out a cause of action. As such, Claim 7 will be dismissed for failure to state a claim.

Motion to Request Legal Representation:

Plaintiff has also filed a Motion to Request Legal Representation. A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). At this time, it is not necessary to appoint counsel for plaintiff. Plaintiff has made no showing of "exceptional circumstances" in his case that would warrant appointment of counsel. Moreover, to date, plaintiff has ably filed his pleadings and replied to the July 28 Order in a timely and coherent fashion. Therefore, his Motion for Appointment of Counsel will be denied without prejudice.

Request to Proceed In Forma Pauperis:

Finally, plaintiff has consented to pay an initial filing fee and to make subsequent payments, pursuant to 28 U.S.C. § 1915(b), until he has paid the full $350.00 filing fee. Plaintiff's institution

---

[3] One informal complaint form submitted on October 7, 2006, and returned to plaintiff on November 10, 2006, states that plaintiff was seen on June 23, June 26, June 27, July 25, July 26, July 28, October 2, October 3, October 12, and October 13 by HRRJ medical staff, and was also sent for orthopaedic surgery.

supplied information on plaintiff's inmate account reflecting that, for the past six months, plaintiff had an average monthly deposit of $57.41 to his inmate account, had an average monthly balance of $13.04,[4] and a balance of $0.00 at the time of inquiry.  Therefore, plaintiff will be required to pay an initial filing fee of $11.48, which is twenty percent (20%) of the greater of the average monthly deposits or balance for the last six months preceding filing of this complaint.  See 28 U.S.C. § 1915(b)(1).  After submitting his initial filing fee, plaintiff will be required monthly to remit to the Clerk twenty percent (20%) of any income into the plaintiff's inmate account, if that income causes his inmate account balance to exceed $10.00.  28 U.S.C. § 1915(b)(2).  This shall continue until the full filing fee has been paid, even after the case is resolved or dismissed, if necessary.

### V. Conclusion

For the above reasons, plaintiff has failed to state a claim against any of the named defendants in claims 1, 2, 3, 5, 6, and 7.  Accordingly, those claims and attendant defendants will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).  The case will remain pending solely on Claim 4.  An appropriate Order shall issue.

Entered this ____ day of _____ 2008.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[4] It appears the fiscal technician failed to include the average monthly balance amount, however, the Court was able to calculate this amount based on the monthly balances for the six months prior to this Court's request for information.